IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JODI KNIPPEN, DALE CUTSINGER, and SANDRA LOU CUTSINGER,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DAVID E. GROCHOCINSKI, Trustee,<br><br>　　　　　　　　　　Defendant. | Civil Action No.: 07 C 1697<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

In the course of Kerry Knippen's bankruptcy, David Grochocinski ("the trustee") sued Jodi Knippen, Kerry's ex-wife, and her aunt and uncle, Sandra Lou and Dale Cutsinger, to recover property conveyed to Jodi under a marital settlement agreement and subsequently purchased by the Cutsingers. The trustee alleged the property transfer was fraudulent under the federal bankruptcy code, 11 U.S.C. § 548(a), and the Illinois Uniform Fraudulent Transfer Act, 735 ILCS 160/5 *et seq.* After a bench trial, the bankruptcy court found the transfer was constructively fraudulent and held Jodi and the Cutsingers liable for Kerry's interest in the property. They appeal. For the reasons set forth below, the bankruptcy court is affirmed.

## BACKGROUND

The facts are taken from the bankruptcy court's opinion and pertinent parts of the trial record. *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710 (Bankr. N.D. Ill. 2006). In January 2002, after approximately six years of marriage, Jodi filed for divorce. Following a protracted custody dispute, the parties signed a marital settlement agreement dividing their assets. Jodi received the

marital home ("the Aurora property"), the couple's largest asset, taking responsibility for mortgages totaling approximately $152,000. She also received a car and a checking account. She was liable for attorney's fees she incurred during the custody dispute, various credit card debts, and an unpaid promissory note to the Cutsingers. Kerry retained ownership of an ATV, a Chevy Camaro, two checking accounts, his interest in Hunter Tech, Inc. (a service company he started to repair hydraulic lifts), his tools, and future income tax refunds. In addition, he received three other vehicles: a Toyota 4-Runner, a Dodge van, and a GMC van. He was responsible for various credit card debts. Both parties waived the right to maintenance.

In September 2004, Kerry quitclaimed his interest in the Aurora property to Jodi. She sold the property to the Cutsingers soon after. However, she rented the home and continued living there. The purchase money was placed in a trust she used to pay off the mortgages, pay rent, and reduce her credit card debt. The Cutsingers agreed to the arrangement because they knew Jodi was having difficulty paying her mortgages. They also were aware that the Knippens faced financial difficulties prior to their divorce.

Kerry filed for bankruptcy protection in April 2005. His schedules stated he had approximately $8,500 in personal property, including the Oxford bank accounts, household goods and clothing, vehicles, and tools. He listed his interest in Hunter Tech as valueless. He disclosed unsecured debt of over $69,000. He also disclosed that his monthly expenses exceeded his income by approximately $3,900.

In February 2006, the trustee filed suit against Jodi and the Cutsingers, alleging the Aurora property transfer was fraudulent and should be voided. In turn, the trustee alleged the Cutsingers' purchase should be voided. The complaint stated claims under federal and state law for actual and

2

constructive fraud, and sought recovery of the Aurora property for the benefit of creditors. Specifically, the complaint sought to void: (1) the Knippen transfer pursuant to 11 U.S.C. §§ 548(a) and 550(a); (2) the subsequent Cutsinger purchase under § 550(a); (3) the Knippen transfer pursuant to 740 ILCS 160/5 and 160/9(b); (4) the Knippen transfer pursuant to 740 ILCS 160/6 and 160/9(b); and (5) the Cutsinger purchase under 740 ILCS 160/9(b).

In November 2006, the bankruptcy court held a bench trial. The trustee, Kerry, Jodi, and Dale Cutsinger testified regarding Kerry's solvency and asset values. The bankruptcy court found there was insufficient evidence of actual fraud because Kerry had no intent to defraud creditors when he transferred the property to his former wife. *In re Knippen*, 355 B.R. at 722, 735. However, there was sufficient evidence of constructive fraud. The bankruptcy court determined Kerry was insolvent at the time of the transfer and he did not receive "a reasonably equivalent value" for his property interest. *Id.* at 725-26. The bankruptcy court relied heavily on the trustee's asset valuations, which the court found "credible, unrebutted, and supported by the documentary evidence." *Id.* at 724. Because the transfer was ruled fraudulent, the property's value was recoverable from Jodi. *Id.* at 728. Consequently, the Cutsingers were also liable. *Id.* at 730. The bankruptcy court found they had not established a good faith defense as subsequent transferees; they were on notice of Kerry's financial problems prior to acquiring the property. *Id.* The bankruptcy court found Jodi and the Cutsingers liable for $20,000, Kerry's one-half interest in the Aurora property. *Id.*

## DISCUSSION

Jodi and the Cutsingers contend the bankruptcy court erred in finding the Aurora property transfer was constructively fraudulent. They argue Jodi gave her former husband reasonably equivalent value for the property and he was not insolvent at the time of transfer. They also contend

3

the bankruptcy court erred by concluding the subsequent Cutsinger purchase was voidable. They assert the Cutsingers are good faith purchasers exempt from recovery.

**I.     Standard of Review**

The court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013; *Matter of Yonikus*, 996 F.2d 866, 873 (7th Cir. 1993). The court reviews the bankruptcy court's conclusions of law *de novo*; factual findings are reviewed for clear error. *Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir. 1990). A finding is clearly erroneous when, "although there may be some evidence to support it, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lange v. United States*, 31 F.3d 535, 539 (7th Cir. 1994) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

**II.    Constructive Fraud**

The bankruptcy statutes codify the "ancient" principle that creditors may recover property that is fraudulently transferred. *Baldi v. Lynch (In re McCook Metals, LLC)*; 319 B.R. 570, 586 (Bankr. N.D. Ill. 2005). Section 548(a)'s "constructive fraud" provisions provide:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–* * *
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . .

11 U.S.C. § 548(a)(1)(B) (2005). *See also Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 505 (N.D. Ill. 1988) (Holderman, J.) (setting forth elements under § 548(a)(1)(B)). The Illinois Uniform Fraudulent Transfer Act ("the Transfer Act") contains similar provisions. 740 ILCS 160/5(a)(2) and

4

160/6(a); *In re McCook Metals*, 319 B.R. at 587 (state law applies to bankruptcy proceedings under 11 U.S.C. § 544(a)). If a transfer is fraudulent under § 548 or the Transfer Act, a trustee may recover the value of the property from the initial transferee, and potentially from subsequent transferees. 11 U.S.C. § 550(a); 740 ILCS 160/9(b). It is the trustee's burden to prove by a preponderance of the evidence that there was a fraudulent transfer and recovery is appropriate. *Mottaz v. Oswald (In re Frierdich)*, 294 F.3d 864, 867 (7th Cir. 2002).

### A. Reasonably Equivalent Value

The bankruptcy court found Kerry did not receive a reasonably equivalent value for his interest in the Aurora property. Jodi and the Cutsingers contend the bankruptcy court employed the wrong legal standard and made factual errors in its determination, improperly taking a "snapshot" of the property transfer "in strictly dollar terms." Pls. Br. at 10. They contend the bankruptcy court should have considered Jodi's waiver of maintenance and valued Kerry's assets higher when calculating equivalent value. The trustee responds that the bankruptcy court properly considered and valued assets based on the evidence presented at trial.

Determining whether Jodi gave reasonably equivalent value to her former husband is a two-step process. The bankruptcy court must first determine whether he received value; then, the court examines whether the value is reasonably equivalent to what he gave. *Anand v. National Republic Bank of Chicago*, 239 B.R. 511, 516-17 (N.D. Ill. 1999) (Pallmeyer, J.). Reasonably equivalent value is not defined in the bankruptcy code. The following factors are considered on this issue: (1) whether the value of the property transferred is equal to the value received; (2) the market value of the property transferred and received; (3) whether the transaction took place at arm's length; and (4) whether the transferee acted in good faith. *Helms v. Roti (In re Roti)*, 271 B.R. 281, 295 (Bankr.

5

N.D. Ill. 2002) (citing *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997)). Whether reasonably equivalent value was given is a question of fact; it is measured at the time of transfer. *In re McCook Metals*, 319 B.R. at 589; *Official Comm. v. Pedersen & Houpt (In re Crystal Med. Prods., Inc.)*, 240 B.R. 290, 300 (Bankr. N.D. Ill. 1999). The same analysis applies under the Transfer Act. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 577 (7th Cir. 1998).

Using these standards, the bankruptcy court carefully analyzed whether Kerry received reasonably equivalent value for the Aurora property. First, the bankruptcy court determined that the property's fair market value at the time of the September 2004 transfer was $210,000. *In re Knippen*, 355 B.R. 726. This figure was based on the trustee's testimony and an appraisal. *Id.* at 723 (trustee reviewed comparable properties and performed a tract search of existing liens, estimating a value range of $210,000 to $215,000; an appraisal valued the property at $208,000). Second, the bankruptcy court calculated the property's equity at $57,000 by subtracting the existing mortgage liens listed in the marital settlement agreement. *Id.* at 723, 726 (mortgage liens totaled approximately $153,000). Therefore, Kerry's one-half interest was $28,500. *Id.* The bankruptcy court then subtracted the $8,500 in assets he received for the property. *Id.* at 726. This amount was established by the trustee's testimony and supported by Kerry's bankruptcy schedules. *Id.* at 724 (trustee's valuation based on experience, the marital settlement agreement, and the bankruptcy schedules). The bankruptcy court rejected challenges to the valuation, relying on the trustee's "extensive experience." *Id.* Accordingly, the bankruptcy court determined Kerry did not receive a reasonably equivalent value for the property because Jodi received $20,000 more than him. *Id.* Based on the trial record, there is no error in the bankruptcy court's well-supported analysis. *Lange*,

31 F.3d at 539.

Jodi and the Cutsingers contend Jodi's maintenance waiver should have been included in the equivalent value calculation. Pls. Br. at 10-11. But they do not specify, or even estimate, the waiver's value. Nor did they present any waiver evidence before the bankruptcy court. In fact, the record is silent on the issue of maintenance. Even if the maintenance waiver issue were raised, the bankruptcy court could not have considered the issue. An unperformed promise for future support does not constitute value for determining reasonable equivalence. *Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 172 (Bankr. N.D. Ill. 1997). The authority cited is inapposite. *See Harman v. Surlucco (In re Surlucco)*, 68. B.R. 748, 753 (Bankr. N.H. 1986) (non-binding case where court admits, "the approach I take here is not supported by any existing case law"); *Elliot v. Zamudio (In re Zamudio)*, Bankr. No. 04 B 05055, 2005 WL 2035969 (Bankr. N.D. Ill. Aug. 23, 2005) (addressing different statute and not reaching maintenance issue).

Jodi and the Cutsingers also contend the bankruptcy court miscalculated the Aurora property's value. They argue the property's equity should be reduced by $10,000 for unpaid real estate taxes and broker fees. Pls. Br. at 12. No record evidence is cited to support their argument. There is nothing indicating sales costs. Nor is there evidence the parties even contemplated selling the property when it was transferred to Jodi. To the contrary, the record indicates the Cutsingers purchased the property only after discovering Jodi could not meet her mortgage payments. *In re Knippen*, 355 B.R. at 719. Similarly, there is no evidence supporting a reduction for unpaid taxes. *See Watson v. Smith*, No. NA00-44 C-B/G, 2001 WL 327802, at *5 (S.D. Ind. Mar. 30, 2001) ("[w]hen the Seventh Circuit directs that determinations must be made on the basis of the 'totality of the circumstances,' it obviously assumes that those circumstances will at least be developed in

the evidence").

The argument that the bankruptcy court incorrectly valued the assets Jodi gave for the property also fails. Based on the trustee's evaluation, the bankruptcy court found Kerry received $8,500 in assets for his $28,500 interest in the Aurora property. *In re Knippen*, 355 B.R. at 724. Jodi and the Cutsingers argue the bankruptcy court erred by crediting the trustee's testimony over Kerry's. Pls. Br. at 14. But Kerry's self-serving statements at trial conflicted with his bankruptcy schedules. *Compare id.* at 13 *with In re Knippen*, 355 B.R. at 719-20. In contrast, the trustee's statements were "credible, unrebutted, and supported by documentary evidence." *In re Knippen*, 355 B.R. at 724. He also had "extensive experience" valuing assets. *Id.* The bankruptcy court was in the best position to weigh evidence and assess witness credibility. *Torres v. Wisconsin Dep't of Health & Social Servs.*, 838 F.2d 944, 946 (7th Cir. 1988). No basis has been shown to overturn the bankruptcy court's determination. *Lange*, 31 F.3d at 539.

**B.     Kerry Knippen's Insolvency**

The bankruptcy court found Kerry was insolvent when the Aurora property was transferred to Jodi. She and the Cutsingers argue that ruling was incorrect. Although they concede Kerry was insolvent when he filed for bankruptcy, they argue he was solvent when the property was transferred. They contend the bankruptcy court improperly "extrapolated" Kerry's insolvency retroactively to the time of transfer. Pls. Br. at 16.

Section 101(32) of the bankruptcy code defines insolvency as a "financial condition such that the sum of [the] entity's debts is greater than all of [the] entity's property, at a fair valuation, exclusive of . . . property transferred [by fraud]." 11 U.S.C. § 101(32)(A). In other words, the code takes a "balance sheet approach" to insolvency, examining whether a debtor's assets exceeded his

8

liabilities. *Grochocinski v. Reliant Interactive Media Corp. (In re General Search.com)*, 322 B.R. 836, 848 (Bankr. N.D. Ill. 2005) (citing *Covey v. Commercial Nat'l Bank*, 960 F.2d 657, 660 (7th Cir. 1992)). Insolvency is determined at the time of the allegedly fraudulent transfer. *In re Crystal Med. Prods.*, 240 B.R. at 300.

There is no question Kerry was "balance sheet" insolvent when he transferred the Aurora property. The bankruptcy court relied on Kerry's testimony and bankruptcy schedules, which revealed a bleak financial picture. *In re Knippen*, 355 B.R. at 723. He owned no real estate after the transfer; his personal service business had no value; his personal property totaled only $8,500; and he had unsecured debts of $69,000. *Id.* at 720, 723. His monthly income was $1,600, compared to monthly expenses of $5,600. *Id.* at 723. Given these facts, the bankruptcy court correctly determined Kerry was insolvent. *See Covey*, 960 F.2d at 660 (if a willing buyer would assign a negative value to the debtor's entire package of assets and liabilities, the debtor is deemed insolvent).

The argument that the court determined insolvency at the wrong time is meritless. The trustee testified that Kerry informed him that his financial condition had not changed between his divorce and filing for bankruptcy. *In re Knippen*, 355 B.R. at 723. At trial, Kerry contradicted his earlier statement by asserting his income dropped only after the property transfer. Tr. at 53. Given Kerry's inconsistent testimony regarding asset values, the bankruptcy court committed no error in relying on the trustee's testimony. *Torres*, 838 F.2d at 946. Even disregarding Kerry's statement to the trustee, the bankruptcy court correctly determined insolvency. Neither Jodi nor the Cutsingers offered evidence that Kerry's income was sufficient at the time of transfer to overcome his extensive debt. Tr. at 53 (alleged monthly income of $4,000 does not exceed monthly expenses of $5,600); *Watson*, 2001 WL 327802, at *5.

The bankruptcy court did not err in ruling that Kerry's transfer of the Aurora property to his former wife was constructively fraudulent under § 548 and the Transfer Act. Nor did the bankruptcy court err by voiding the transfer. Therefore, Jodi is liable for the recovery of $20,000 to benefit creditors.

## III. Good Faith Purchaser

The bankruptcy court found the Cutsingers liable as subsequent transferees and rejected their good faith defense. They argue this was error because they were unaware of Kerry's negative financial condition when they purchased the property. According to the Cutsingers, there was insufficient evidence to negate a good faith defense. The trustee counters that it was the Cutsingers' burden to prove good faith; the bankruptcy court correctly found the burden was not met.

Section 550(b) of the bankruptcy code provides: "[t]he trustee may not recover . . . [from] a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided[.]" 11 U.S.C. § 550(b)(1). A subsequent transferee acting in good faith without knowledge has a complete defense to the recovery of a fraudulently transferred property. *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988). Knowledge of voidability does not require a "complete understanding of the facts . . . some lesser standard will do." *Id.* at 898. The transferee has the burden to prove the defense. *Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 881 (Bankr. N.D. Ill. 2006).

The bankruptcy court determined the Cutsingers failed to prove they were "without knowledge" that the transfer could be avoided. *In re Knippen*, 355 B.R. at 729-30. Dale Cutsinger testified that he was aware of the Knippens' financial difficulties when he purchased the Aurora

10

property. *Id.* at 730. He also stated the couple still owed on a promissory note he gave them prior to the transfer. *Id.* This was confirmed by the marital settlement agreement. *Id.* In fact, Cutsinger was present when the agreement was entered. *Id.* at 719. Further, Cutsinger knew Jodi could not meet mortgage payments, partly because she owed extensive credit card debt incurred during the marriage. *Id.* at 730. Cutsinger knew Kerry had credit card debt. *Id.* The record suggests Dale Cutsinger was Jodi's confidant and was well-aware of the couple's financial situation. *Id.* The bankruptcy court did not err in determining the Cutsingers failed to prove they were without knowledge that the property transfer was potentially voidable. *Lange*, 31 F.3d at 539.

Although they concede knowing of Jodi's financial troubles, the Cutsingers argue they were unaware of Kerry's difficulties. Pls. Br. at 17. But that contention directly contradicts Dale Cutsinger's testimony and ignores the record: he admitted knowing that Kerry had his "own financial problems." *In re Knippen*, 355 B.R. at 730; Tr. at 85. The Cutsingers could not have "diligently inquired" into Jodi's financial condition without discovering Kerry's insolvency. Pls. Br. at 17. Moreover, it was the Cutsingers' burden to present evidence justifying a good faith defense. *In re Teknek, LLC*, 343 B.R. at 881. They point to nothing in the record demonstrating they met their burden.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's judgment is affirmed.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 18, 2007

11